UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------

UNITED STATES OF AMERICA,

       - against -

VICTOR GAVALO,

               Defendant.

**MEMORANDUM & ORDER**
24-CR-80 (MKB)

---------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

    On February 21, 2024, a grand jury indicted Defendant Victor Gavalo, charging him with one count of possessing ammunition as a convicted felon, in violation of 18 U.S.C. § 922(g)(1). (Indictment ¶ 1, Docket Entry No. 10.) The indictment alleges that on or about January 27, 2024, Gavalo knowingly and intentionally possessed ammunition, despite "knowing that he had previously been convicted in a court of one or more crimes punishable by a term of imprisonment exceeding one year." (*Id.*)

    On June 28, 2024, Gavalo moved to dismiss the indictment pursuant to Rule 12(b)(1) of the Federal Rules of Criminal Procedure, on the ground that the indictment under section 922(g)(1) violates his Second Amendment rights.[1] Gavalo argues that this charge should be dismissed because *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022), rendered section 922(g)(1) unconstitutional. (Def.'s Mem. 4–5.) On July 31, 2024, the government opposed the motion. (Gov't Opp'n to Def.'s Mot. ("Gov't Opp'n"), Docket Entry No. 25.) For the reasons explained below, the Court denies the motion.

---

[1] (Def.'s Mot. to Dismiss Indictment ("Def.'s Mot."), Docket Entry No. 23; Decl. of Michael K. Schneider in Supp of Def.'s Mot. ("Def.'s Mem."), Docket Entry No. 23-1; Def.'s Reply in Supp. of Def.'s Mot. ("Def.'s Reply"), Docket Entry No. 26.)

I. **Background**

Gavalo was previously convicted of manslaughter in the first degree in violation of New York Penal Law Section 125.20, a class B felony, in connection with a shooting that took place in October of 2006.[2] (Gov't Opp'n 1–2; Compl. ¶ 11, Docket Entry No. 1.) Gavalo was sentenced to seventeen years of imprisonment, and was released on August 3, 2021, to serve a five-year term of parole set to expire on August 3, 2026. (Gov't Opp'n 2.)

The government alleges that on January 27, 2024, during his parole term, Gavalo was driving down a street in Queens when he exited his vehicle and opened fire on the occupants of a vehicle behind him. (*Id.* at 1.) When New York City Police Department officers responded to the scene, they found six 9-millimeter shell casings in the area where Gavalo had been standing. (*Id.*; *see also* Compl. ¶ 5 (alleging that "six Winchester casings were located in close proximity" to the vehicle Gavalo was driving, and noting that Winchester cartridges are "compatible with 9mm firearms").) On February 21, 2024, a grand jury returned an indictment against Gavalo charging him with violating 18 U.S.C. § 922(g)(1) in connection with the shell casings recovered following the January 27 incident. (Gov't Opp'n 2; *see also* Indictment.)

II. **Discussion**

Gavalo now moves to dismiss the indictment under Rule 12(b)(1) of the Federal Rules of Criminal Procedure[3] on the grounds that, under *Bruen*'s new framework for Second Amendment challenges, "a total prohibition on firearm possession by felons . . . presumptively violates the

---

[2] The Court relies on the factual background as described in the government's opposition and as charged in the initial complaint against Gavalo, for the sole purpose of providing context.

[3] "Before trial, a defendant 'may raise by . . . motion any defense, objection, or request that the court can determine without a trial on the merits,' including a motion alleging 'a defect in the indictment.'" *United States v. Aiyer*, 33 F.4th 97, 116 (2d Cir. 2022) (quoting Fed. R. Crim. P. 12(b)(1), (b)(3)(B)).

2

Second Amendment," and section 922(g)(1) is therefore unconstitutional.[4] (Def.'s Mem. 11–12.) Gavalo first argues that *Bruen* requires courts to consider whether the "plain text" of the Second Amendment protects an individual's conduct, and that this plain text protects Gavalo's possession of ammunition. (*Id.* at 12–13.) Second, Gavalo argues that the government cannot, as required by *Bruen*, show that section 922(g)(1) "is consistent with this Nation's historical tradition of firearm regulation." (*Id.* at 13 (quoting *Bruen*, 597 U.S. at 17).) In support, Gavalo argues that there is no tradition of statutes "distinctly similar" to section 922(g)(1), and contends that this is particularly concerning because section 922(g)(1) seeks to address a "general societal problem" that would not have been "'unimaginable' at the founding." (*Id.* at 13–16 (quoting *Bruen*, 597 U.S. at 28).) Gavalo further argues that Founding-era militia statutes demonstrate that "felons in the founding era not only were *permitted* to possess firearms, they actually were legally *required* to do so." (*Id.* at 17.) Gavalo asserts that historical statutes making it illegal for "dangerous" or "unvirtuous" groups to bear arms do not undermine this argument. (*Id.* at 25–32.) Third, Gavalo argues that the Supreme Court's statements about "presumptively lawful regulatory measures" restricting firearm usage to "law-abiding, responsible citizens" in *District of Columbia v. Heller*, 554 U.S. 570 (2008), do not justify "ignoring *Bruen*'s clear command" to assess whether challenged regulations are rooted in history and tradition. (*Id.* at 17–25.)

The government argues that while *Bruen* may have changed how courts are to approach Second Amendment challenges, binding Second Circuit precedent holds that section 922(g)(1) is a constitutional restriction on the rights of convicted felons. (Gov't Opp'n 2–4.) The

---

[4] Section 922(g)(1) makes it unlawful for "any person . . . who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year," to "possess in or affecting commerce, any firearm or ammunition." 18 U.S.C. § 922(g); *see also Gazzola v. Hochul*, 88 F.4th 186, 200 (2d Cir. 2023) ("Federal law prohibits certain classes of people, like felons, . . . from purchasing or possessing firearms or ammunition.").

3

government further argues that even if *Bruen*'s framework were applied to this case, prohibitions on possession of firearms and ammunition by felons are consistent with the nation's history and tradition. (*Id.* at 4–8.)

"The Second Amendment provides: 'A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed.'" *Heller*, 554 U.S. at 576 (quoting U.S. Const. amend. II); *see also Gazzola v. Hochul*, 88 F.4th 186, 195 (2d Cir. 2023) (same). In *Heller*, the Supreme Court held for the first time that "the Second Amendment codifies a pre-existing individual right to keep and bear arms for self-defense in case of confrontation — a right that is not limited to service in an organized militia." *Gazzola*, 88 F.4th at 195 (citing *Heller*, 554 U.S. at 592, 595). The Supreme Court clarified, however, that the "individual right to keep and bear arms" under the Second Amendment is "not unlimited." *Heller*, 554 U.S. at 595, 626. In particular, *Heller* should not "be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons," or on other such "presumptively lawful" regulations. *Id.* at 626–27 & n.26. Two years later, in holding that the Second Amendment applies to the states via the Fourteenth Amendment, the Supreme Court reaffirmed its holding in *Heller*, along with its support for "such longstanding regulatory measures as 'prohibitions on the possession of firearms by felons.'" *See McDonald v. City of Chicago*, 561 U.S. 742, 786 (2010) (quoting *Heller*, 554 U.S. at 626).

In 2022, the Supreme Court announced a new framework for analyzing challenges to restrictions on Second Amendment rights. *See generally Bruen*, 597 U.S. 1. In *Bruen*, the Supreme Court concluded that the second step of the two-step test that "Courts of Appeals ha[d] developed to assess Second Amendment claims" was "inconsistent with *Heller*'s historical approach and its rejection of means-end scrutiny," and established a new standard for applying

4

the Second Amendment. *Id.* at 18, 24. Under *Bruen*, the proper test must be "rooted in the Second Amendment's text, as informed by history," and the government must "justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id.* at 19, 24. After *Bruen*, the Supreme Court decided *United States v. Rahimi*, rejecting a challenge to 18 U.S.C. § 922(g)(8). 602 U.S. ---, ---, 144 S. Ct. 1889, 1894, 1897 (2024). Section 922(g)(8) "prohibits an individual subject to a domestic violence restraining order from possessing a firearm if that order includes a finding that he 'represents a credible threat to the physical safety of [an] intimate partner,' or a child of the partner or individual." *Id.* at 1894 (alteration in original) (quoting 18 U.S.C. § 922(g)(8)). In upholding section 922(g)(8), the Supreme Court held that it was analogous to "surety" and "going armed" laws in effect at the time of the Founding, and thus "[w]hen an individual poses a clear threat of physical violence to another, the threatening individual may be disarmed." *Id.* at 1899–1901.

Prior to *Bruen* and *Rahimi*, in *United States v. Bogle*, the Second Circuit issued a short per curiam opinion based on *Heller* and *McDonald* upholding the constitutionality of section 922(g)(1) in the face of a challenge similar to the one Gavalo now raises. 717 F.3d 281, 281–82 (2d Cir. 2013) (per curiam). The court avoided engaging in the type of means-end scrutiny, *i.e.*, strict or intermediate scrutiny, that the *Bruen* Court described as constituting "one step too many" in adjudicating Second Amendment challenges. *Bruen*, 597 U.S. at 19. Instead, in *Bogle*, the Second Circuit's analysis relied on the Supreme Court's caution in *Heller* and *McDonald* that those decisions should not "be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons." 717 F.3d at 281 (quoting *Heller*, 554 U.S. at 626); *see also McDonald*, 561 U.S. at 786 (quoting the same). Relying only on such language, the Second Circuit "join[ed] every other circuit to consider the issue in affirming that [section] 922(g)(1) is a constitutional

5

restriction on the Second Amendment rights of convicted felons." *Bogle*, 717 F.3d at 281–82.

The Court concludes that it is bound by *Bogle*'s holding — one that resulted from reasoning in *Heller* and *McDonald* that *Bruen* upheld — that section 922(g)(1) is constitutional under the Second Amendment, and Gavalo's challenge accordingly fails. *See Bruen*, 597 U.S. at 9–10 (confirming that its holding was "consistent with *Heller* and *McDonald*"); *id.* at 38–39 (highlighting that its historical inquiry focused on, *inter alia*, whether "tradition limit[ed] public carry only to those law-abiding citizens who demonstrate a special need for self-defense"). The Court is unpersuaded by Gavalo's argument that "*Bruen* abrogated the one-paragraph decision in *Bogle*." (Def.'s Reply 1 (asserting that *Bogle* erroneously failed to use the "text-and-history" standard announced in *Bruen* (quoting *Bruen*, 597 U.S. at 39)).) Regardless of whether the Second Circuit chooses to revisit *Bogle*'s holding in light of *Bruen* and *Rahimi*, this Court remains bound by squarely applicable precedent. *See United States v. Steinberg*, 21 F. Supp. 3d 309, 319 (S.D.N.Y. 2014) ("[A lower court] should follow the case which directly controls, leaving to [reviewing courts] the prerogative of overruling [their] own decisions." (alterations in original) (quoting *Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 484 (1989))), *abrogated on other grounds by United States v. Newman*, 773 F.3d 438 (2d Cir. 2014). If and when the Second Circuit eventually considers whether *Bruen* requires reversing *Bogle*,[5] it will depart from *Bogle* only if it finds some "conflict, incompatibility, or 'inconsistency'" between its decision and the Supreme Court's decision in *Bruen*. *See In re Arab Bank, PLC Alien Tort Statute Litig.*, 808 F.3d 144, 155 (2d Cir. 2015) (alteration adopted) (quoting *Wojchowski v. Daines*, 498 F.3d 99, 109 (2d Cir. 2007)). Where, as here, "the Second Circuit

---

[5] As the government points out, facial and as-applied challenges are pending before the Second Circuit in *United States v. Thawney*, No. 22-1399 (2d Cir.), and *Zherka v. Garland*, No. 22-1108 (2d Cir.). (Gov't Opp'n 3 n.3.)

has spoken directly to the issue," this Court is required to follow that ruling "unless a subsequent decision of the Supreme Court so undermines it that it will almost inevitably be overruled by the Second Circuit." *United States v. Smith*, 489 F. Supp. 3d 167, 172–73 (S.D.N.Y. 2020) (quoting *United States v. Diaz*, 122 F. Supp. 3d 165, 179 (S.D.N.Y. 2015), *aff'd*, 854 F.3d 197 (2d Cir. 2017)).

The Court cannot conclude that the Second Circuit will "almost inevitably" overrule *Bogle* in light of *Bruen*. *See id.* As discussed, *Heller* explained that "nothing in [its] opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons." 554 U.S. at 626. *McDonald* reaffirmed this statement, describing *Heller* as making "clear" that its holding "did not cast doubt on such longstanding regulatory measure as 'prohibitions on the possession of firearms by felons.'" *McDonald*, 561 U.S. at 786 (quoting *Heller*, 554 U.S. at 626). The Second Circuit in *Bogle* relied on this language to reach its holding, *see* 717 F.3d at 281, and this language has not been undercut by *Bruen*.[6] *Rahimi* further reinforces this conclusion. The *Rahimi* Court first reiterated that the Second Amendment does not prohibit "the enactment of laws banning the possession of guns by categories of persons thought by a legislature to present a special danger of misuse," and then specified that under *Heller*, "many such prohibitions, like those on the possession of firearms by 'felons and the mentally ill,' are 'presumptively lawful.'" 144 S. Ct. at 1901–02 (quoting *Heller*, 554 U.S. at 626–27 & n.26). *Bogle* did not apply means-end scrutiny and instead relied solely on this same language in *Heller* that highlighted historical, "longstanding prohibitions on the possession of

---

[6] In addition, the *Bruen* Court abrogated the decisions of several circuit courts — including the Second Circuit's decision in *Kachalsky v. County of Westchester*, 701 F.3d 81 (2d Cir. 2012) — faulting them for applying means-end scrutiny to determine the constitutionality of a firearms regulation. *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 19 & n.4 (2022). The Supreme Court did not, however, abrogate *Bogle*. *See id.*

7

firearms by felons." *Bogle*, 717 F.3d at 281 (quoting *Heller*, 554 U.S. at 626). *Bogle* therefore remains good law following *Bruen*.[7]

The Court concludes that Gavalo's indictment under section 922(g)(1) does not violate his Second Amendment rights, because under established Second Circuit precedent, "§ 922(g)(1) is a constitutional restriction on the Second Amendment rights of convicted felons." *See Bogle*, 717 F.3d at 281–82. The Court therefore declines to engage in *Bruen*'s historical analysis.[8]

---

[7] Other courts in this circuit to have addressed *Bogle* post-*Bruen* have similarly concluded that *Bogle* remains binding precedent. *See, e.g.*, *United States v. Carter*, No. 23-CR-74, 2024 WL 3785366, at *3 (D. Conn. Aug. 13, 2024) ("*Bruen* did not disturb the precedents upon which *Bogle* relies and *Bogle* therefore remains binding upon this [c]ourt."); *United States v. Pankey*, No. 24-CR-122, 2024 WL 3522138, at *4 (S.D.N.Y. July 23, 2024) (concluding that even after *Bruen*, "*Bogle*'s holding remains binding upon this [c]ourt and [s]ection 922(g)(1) is constitutional on its face"); *United States v. Montanez*, No. 23-CR-186, 2024 WL 3360534, at *3 (E.D.N.Y. July 10, 2024) (same); *United States v. Sanders*, 707 F. Supp. 3d 239, 241 (E.D.N.Y. 2023) ("Second Circuit precedents bind this [c]ourt, including the Second Circuit's decision in [*Bogle*], holding that '[section] 922(g)(1) is a constitutional restriction on the Second Amendment rights of convicted felons.'" (quoting *Bogle*, 717 F.3d at 281–82)); *United States v. Sternquist*, 692 F. Supp. 3d 19, 26 (E.D.N.Y. 2023) ("[T]his [c]ourt joins the other district courts in this Circuit that have considered post-*Bruen* challenges to [section] 922(g)(1)'s constitutionality in light of *Bogle* in finding that 'nothing in *Bruen*[] alters the rationale of *Bogle*' and, '. . . *Bogle* remains binding precedent within this Circuit on the constitutionality of [section] 922(g)[(1)]." (fourth and sixth alterations in original) (first quoting *United States v. Garlick*, No. 22-CR-540, 2023 WL 2575664, at *5 (S.D.N.Y. Mar. 20, 2023); and then quoting *United States v. Hampton*, 676 F. Supp. 3d 283, 301 (S.D.N.Y. 2023))).

[8] Although the Court declines to apply *Bruen*'s historical analysis to section 922(g)(1), other courts in the Second Circuit that have engaged in this inquiry have uniformly found that section 922(g)(1) is constitutional under *Bruen*'s historical analysis. *See Sanders*, 707 F. Supp. 3d at 243 n.5 (collecting cases); *see also Montanez*, 2024 WL 3360534, at *3; *United States v. Mitchell*, No. 23-CR-198, 2023 WL 8006344, at *4–7 (S.D.N.Y. Nov. 17, 2023); *United States v. Ford*, No. 23-CR-107, 2023 WL 7131742, at *3 (S.D.N.Y. Oct. 30, 2023); *United States v. Abreu*, No. 23-CR-67, 2023 WL 6541302, at *3–4 (S.D.N.Y. Oct. 6, 2023).

### III. Conclusion

For the foregoing reasons, the Court denies Gavalo's motion to dismiss the indictment.

Dated: September 9, 2024
      Brooklyn, New York

                                        SO ORDERED:

                                        _____s/ MKB_____
                                        MARGO K. BRODIE
                                        United States District Judge