UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------
UNITED STATES OF AMERICA,

– against –

VICTOR GAVALO,

Defendant.
----------------------------------------------------------------

**MEMORANDUM & ORDER**
24-CR-80 (MKB)

MARGO K. BRODIE, United States District Judge:

Defendant Victor Gavalo is scheduled to be sentenced on April 2, 2025, based on his plea of guilty to being a felon in possession of ammunition in violation of sections 922(g)(1) and 924(a)(8) of Title 18 of the United States Code. (Presentence Investigation Report ("PSR") ¶ 1, Docket Entry No. 29; Order dated Mar. 18, 2025.) In its sentencing submission, the Government argues that the Court should apply the attempted murder cross-reference set forth in the United States Sentencing Guidelines ("USSG") section 2A2.1 because Gavalo attempted to murder occupants of a vehicle with the ammunition that is the source of his conviction. (Gov't Sentencing Mem. ("Gov't Mem.") 12–17, Docket Entry No. 33.) The Court held a *Fatico* hearing on March 6, 2025, during which it reviewed video surveillance footage and heard arguments from the parties. (Min. Entry dated Mar. 6, 2025.)

For the reasons explained below, the Court finds that the Government has shown by a preponderance of the evidence that Gavalo had the specific intent required for the attempted murder cross-reference to apply, and therefore applies the cross-reference.

I. **Background**

On January 27, 2024, Gavalo traveled to 35th Avenue in Queens, New York, and drove by an Audi sedan (the "Audi") parked on the street and another individual ("Individual 1") on the sidewalk who was familiar with Gavalo[1] as discussed below. (PSR ¶ 5; Tr. of Fatico Hr'g ("Hr'g Tr."), 7:1–9:6, 24:2–5; Video A 2:17–24, annexed to Gov't Mem. as Ex. A.) Gavalo waited for approximately thirty seconds at a green traffic light in a Dodge Durango, and upon seeing the Audi with multiple occupants pull in directly behind him, he emerged from his vehicle with a firearm and discharged his firearm at least once at close range[2] as he walked towards the Audi while Individual 1 walked in the opposite direction away from the scene. (PSR ¶ 5; Hr'g Tr. 10:10–12:23, 28:1–9; Video A 2:35–3:05.) The Audi driver returned fire while the passenger fled. (PSR ¶ 6; Hr'g Tr. 12:24–13:18, 29:7–10; Video A 2:56–58.) After the driver shot Gavalo twice, Gavalo fell to the ground and continued to shoot at the driver. (PSR ¶ 6; Hr'g Tr. 13:17–15:8; Video A 2:58–3:02.) Gavalo subsequently returned to his vehicle and drove away. (PSR ¶ 6; Hr'g Tr. 15:8–11; Video A 3:02–07.) Individual 1 returned to the scene of the shooting to

---

[1] Immediately before the Audi exited its parking space, Individual 1 appeared to make a phone call, (Video A 2:30–53, annexed to Gov't Mem. as Ex. A), which the Government argued was to Gavalo, (Tr. of Fatico Hr'g ("Hr'g Tr."), 9:16–11:5). Without phone records to indicate that Individual 1 did call Gavalo, the Court declines to draw the inference that Individual 1 called Gavalo. However, in view of the fact that Individual 1 is later seen on video surveillance footage collecting what appears to be the firearm Gavalo used to shoot at the Audi and is seen on video escorting Gavalo into the hospital, (Presentence Investigation Report ("PSR") ¶¶ 7–8; Video C 00:00–20, annexed to Gov't Mem. as Ex. C), the Court infers that Gavalo and Individual 1 were working together, or, at the very least, knew each other.

[2] Although the Government has not provided an estimate of the distance from which Gavalo shot at the occupants of the Audi, the Audi was located immediately behind the vehicle driven by Gavalo, and Gavalo's proximity to the Audi in the video surveillance footage establishes that he shot at the occupants at close range. (Gov't Mem. 4; Video A 2:35–3:07.) *See Rice v. Hoke*, 846 F.2d 160, 161, 166 (2d Cir. 1988) (describing fifteen to twenty feet as close range).

2

collect what appears to be a firearm from the street and subsequently transported Gavalo to Mount Sinai Queens hospital. (PSR ¶¶ 7–8; Hr'g Tr. 18:10–20:1; 25:10–16; Video C 00:00–20, annexed to Gov't Mem. as Ex. C.) New York City Police Department officers recovered cartridge cases from the scene of the shooting and the Government ultimately charged Gavalo with, and Gavalo pleaded guilty to, being a felon in possession of ammunition.[3] (PSR ¶¶ 1, 9.)

## II. Discussion

The Government has proven that Gavalo had the specific intent necessary to attempt to murder the unidentified occupants of the Audi when he shot at them at close range.

To prove attempted murder, the Government must prove specific intent to kill. *Braxton v. United States*, 500 U.S. 344, 351 n.* (1991); *United States v. Stroman*, 420 F. App'x 100, 105 (2d Cir. 2011) ("*Stroman I*") (quoting *Braxton*, 500 U.S. at 351 n.*). In addition, "first-degree [attempted] murder requires a 'willful, deliberate, malicious, and premeditated killing.'" *United States v. Whiteside*, 207 F. Supp. 3d 311, 320 (S.D.N.Y. 2016) (quoting 18 U.S.C. § 1111(a)); *United States v. Cespedes*, No. 11-CR-1032, 2015 WL 4597539, at *2 (S.D.N.Y. July 30, 2015) (same); *see also United States v. Morgan*, No. 22-2798, 2024 WL 747904, at *3 (2d Cir. Feb. 23, 2024) (explaining that the district court did not err in finding premeditation and specific intent to kill as required to warrant the first-degree attempted murder sentencing enhancement); *Cespedes*, 2015 WL 4597539, at *3 (explaining that first-degree murder requires specific intent to kill and premeditation); *United States v. Delaney*, 717 F.3d 553, 556 (7th Cir. 2013) ("The only difference between the two degrees of murder, sharing as they do the requirement that the murderer have acted with 'malice aforethought,' is . . . that a first-degree murder . . . must be

---

[3] Gavalo has several prior convictions, including felony convictions for attempted possession and possession of a controlled substance, sale of a controlled substance, and manslaughter. (PSR ¶¶ 4, 26–29.)

3

'premeditated.'"); *United States v. Wood*, 207 F.3d 1222, 1228 (10th Cir. 2000) (explaining that first-degree murder requires specific intent to kill and premeditation, whereas second-degree murder only requires specific intent to kill).

For the cross-reference for attempted murder to apply, the court must be able to conclude by a preponderance of the evidence that the defendant actually intended to kill his victim. *United States v. Stroman*, 498 F. App'x 67, 69 (2d Cir. 2012) (explaining that the district court had to conclude, by a preponderance of the evidence, that the defendant shot his gun with the intent to kill at least one of the victims (first citing *Braxton*, 500 U.S. at 351 n.*; and then citing *Stroman I*, 420 F. App'x at 105)); *see also Braxton*, 500 U.S. at 351 n.* ("[A]ttempt to commit murder requires a specific intent to kill." (citation omitted)). Usually, intent to kill is proven by circumstantial evidence. *United States v. Kwong*, 14 F.3d 189, 194 (2d Cir. 1994); *United States v. Muyet*, 994 F. Supp. 501, 517 (S.D.N.Y. 1998). "Premeditation requires 'a cool mind' . . . capable of reflection and "some appreciable time for reflection and consideration before execution of the act." *Cespedes*, 2015 WL 4597539, at *3 (internal quotation marks and citation omitted); *see also Delaney*, 717 F.3d at 556 ("[P]remeditation requires that 'an appreciable time elapse between formation of the design and the fatal act within which there is, in fact, deliberation.'" (emphasis omitted) (quoting *Fisher v. United States*, 328 U.S. 463, 469 n.3 (1946))); *see also United States v. Mulder*, 273 F.3d 91, 117 (2d Cir. 2001) (noting the Second Circuit has not defined premeditation or first-degree murder, but approvingly citing out of circuit cases that have held that premeditation requires that one act with a "cool mind" and "reflect at least for a short period of time before his act of killing" and that cruel or brutal crimes "raise an inference of malice" (first quoting *United States v. Brown*, 518 F.2d 821, 828 (7th Cir. 1975); and then quoting *United States v. Shaw*, 701 F.2d 367, 393 (5th Cir. 1983))). What is important

4

is not the amount of time that elapsed, but only that the defendant deliberates before committing the fatal act. *Cespedes*, 2015 WL 4597539, at *3 (first citing *Brown*, 518 F.2d at 826; then citing *United States v. Catalan-Roman*, 585 F.3d 453, 474 (1st Cir. 2009)); *see also Morgan*, 2024 WL 747904, at *3 ("[P]remeditation 'does not require the lapse of days or hours, or even minutes.' Instead, it merely requires that a person with a 'cool mind' reflect for 'at least . . . a short period of time before his act of killing.'" (citations omitted)).

Courts in the Second Circuit have found specific intent to kill may be inferred where the defendant shoots multiple times or at close range. *United States v. Passley*, No. 22-1361, 2023 WL 8921150, at *2 (2d Cir. Dec. 27, 2023) (affirming a sentencing enhancement for first-degree attempted murder where the defendant, *inter alia*, "pulled up next to the [v]ictims' van, took out a handgun, and fired into the side of the van"), *cert. denied*, 145 S. Ct. 221 (2024); *United States v. Rodriguez*, 738 F. App'x 729, 730 (2d Cir. 2018) (finding that video surveillance footage established the defendant acted with the "specific intent to kill the vehicle's occupant or occupants" "by bringing a firearm to the scene, waiting for a specific vehicle to approach from down the street, concealing his presence before firing four shots into the vehicle at close range" and "appearing calmly . . . leav[ing] the scene of the shooting"); *McCallum v. United States*, No. 14-CR-476, 2019 WL 5088587, at *7 (S.D.N.Y. Mar. 1, 2019) ("Although the mere 'fact that a deadly weapon was used does not ipso facto prove the specific intent,' 'only a minimal additional showing of intent is necessary,' and intent to kill can be inferred where the defendant shoots multiple times and/or at close range." (citations omitted) (collecting cases)), *abrogated on other grounds by United States v. Davis*, 588 U.S. 445 (2019); *see also United States v. Greer*, 57 F.4th 626, 629 (8th Cir. 2023) ("'[A]mple case law' shows that shooting at a particular person, or a group of people, demonstrates a specific intent to kill." (citation omitted)); *United*

5

*States v. Bradford*, 822 F. App'x 335, 339 (6th Cir. 2020) (explaining that the court had "previously found that specific intent to kill could be inferred from a defendant firing a gun aimed at an individual"); *People v. Harper*, 17 N.Y.S.3d 797, 800 (App. Div. 2015) (finding that the defendant's intent to kill "was readily inferable from his conduct" based on the evidence because "there were multiple shots fired at the victim").

The evidence established that Gavalo's shooting at the occupants of the Audi was premeditated and deliberate.[4] As established at the *Fatico* hearing, he drove to the scene of the crime, with a gun, having driven by the Audi, waited at a green traffic light until the Audi exited the parking space and pulled into traffic behind Gavalo's vehicle, exited his vehicle, and then shot at the occupants of the Audi. (Hr'g Tr. 10:10–12:23.) *See Morgan*, 2024 WL 747904, at *2–3 (finding premeditation and intent to kill where the defendant entered a building, retrieved a firearm from his neighbor's apartment, "confronted his intended victims on the street, fired multiple shots — some at close range — at [the intended victim], and chased after [the intended victim] for approximately eight seconds"); *Rodriguez*, 738 F. App'x at 730 (finding premeditation and intent to kill where the defendant brought a firearm to the scene, concealed his presence and waited for a specific vehicle to approach before shooting into the vehicle); *see also*

---

[4] Gavalo argues that the government mischaracterizes the video footage. (Def.'s Suppl. Sentencing Mem. ("Def.'s Suppl. Mem.") 2, Docket Entry No. 34.) In support, Gavalo argues that the Audi driver had a gun at the ready to shoot him, that the Audi driver — not him — shot through the Audi's windshield, and disputes the point at which he first discharged his firearm and the timing of the subsequent shots. (Def.'s Suppl. Mem. 3–4; Hr'g Tr. 41:20–21.) Although the video surveillance footage is unclear as to whether Gavalo shot through the windshield or whether Gavalo saw the occupants of the Audi with a firearm, (Hr'g Tr. 35:17–19), the video surveillance footage establishes that Gavalo was the first to discharge his firearm and that he discharged multiple rounds of ammunition at the occupants of the Audi after walking towards them with a raised firearm. (Video A 2:35–3:07.) In addition, there is no question that the driver of the Audi fired a weapon at Gavalo and shot Gavalo twice. (PSR ¶ 6; Def.'s Sentencing Mem. 3, Docket Entry No. 32; Gov't Mem. 14; Hr'g Tr. 2:22–15:9; 35:23–36:1.)

*Cespedes*, 2015 WL 4597539, at *4–6 (finding premeditation where the defendants armed themselves, drove for ten to twenty minutes to another part of the Bronx, and searched for the victim for ten to fifteen minutes before attacking the intended victim with knives and other tools).

The video surveillance footage establishes that Gavalo intended to kill one or more of the occupants of the Audi because Gavalo shot at them at close range, continued to walk towards them after he initially discharged his firearm, and continued to discharge his firearm at the Audi driver after Gavalo was wounded. (PSR ¶¶ 5–6; Hr'g Tr. 10:10–15:11, 35:1–9, 36:15–17.) *See Stroman*, 498 F. App'x at 69–70 (affirming the district court's judgment after concluding that its "observation that '[t]he murder [the defendant] intended to commit . . . was dramatically captured on scene of the grocery's video camera constituted a finding that [the defendant] had a specific intent to kill one or more of the victims" (first and third alterations in original) (citation omitted)). Although Gavalo argues that discharging a firearm only illustrates an intent to scare the occupants of the Audi and also argues that he did not fire his gun through the windshield of the Audi, (Hr'g Tr. 32:15–36:3), as the Court noted at the *Fatico* hearing, Gavalo could have driven his car away from the Audi if he feared that its occupants meant to harm him, (*id.* 30:25–31:2). Instead, he waited at the green traffic light for the Audi to leave its parking spot and drive behind him, exited his vehicle with a firearm, initiated fire at a close range at the occupants of the Audi, walked towards them, and continued to shoot at the Audi driver after he sustained two gunshot wounds. (Video A 2:35–3:07.) *See United States v. Green*, No. 22-800, 2023 WL 7180645, at *2 (2d Cir. Nov. 1, 2023) (explaining that the defendant's claim that "he fired only 'warning shots' made 'no sense at all'" where he "fired six shots 'at a level that's roughly equivalent to the torso of a human being standing on the sidewalk rather than up in the air'"

7

(citations omitted)); *Kwong*, 14 F.3d at 194 (noting that "anyone who wished merely to scare or injure [the intended victim] would have taken some precaution to prevent the trigger of the gun from releasing").

The Court can therefore reasonably infer from Gavalo's actions that he not only intended to scare the occupants of the Audi, but that he also intended to kill at least the driver since he continued to shoot at him even after Gavalo was hurt.[5]  *See Morgan*, 2024 WL 747904, at *2–3 (finding intent to kill where "[t]he surveillance footage show[ed] that [the defendant] entered the building, retrieved a loaded gun from his neighbor's apartment, confronted his intended victims on the street, fired multiple shots — some at close range — at [the intended victim], and chased after [the intended victim] for approximately eight seconds"); *Rodriguez*, 738 F. App'x at 730 (relying on the fact that the defendant fired "four shots into the vehicle at close range" in finding

---

[5] Because counsel for Gavalo agreed that the record before the Court does not establish self-defense, the Court declines to address the justification defense in this Memorandum and Order. (Hr'g Tr. 42:24–43:2.) The Court also notes, as counsel for Gavalo argued at the *Fatico* hearing, the issues of intent are better developed at a jury trial, where there would presumably be more evidence from which the jury could form a conclusion regarding Gavalo's intent, and would be required to make that finding beyond a reasonable doubt. (Hr'g Tr. 42:9–43:10.) *See* Sent'g Tr. 36:22–40:10, *United States v. Powell*, 21-CR-205 (E.D.N.Y. Mar. 6, 2023) (explaining that the question of intent was better suited for the jury trial); *United States v. Jackson*, 351 F. Supp. 2d 108, 114–16 (S.D.N.Y. 2004) (explaining the problem with the court making a finding as to the defendant's intent without a jury trial is that such a finding "requires a detailed inquiry into the state of mind and circumstances of a killing"); *see also Jackson*, 351 F. Supp. 2d at 113–14 ("Whatever one thinks about the general constitutionality of the federal guideline sentencing system, it is unsurprising that fair-minded jurists would be troubled by the notion that [the defendant] could in effect be sentenced for such a serious offense based on a finding of guilt by a judicial officer rather than a jury, based on a preponderance of the evidence rather than proof beyond a reasonable doubt, after a relatively informal fact-finding procedure without the guarantees provided in a traditional trial" (citation omitted)). However, the Court is required at sentencing to make a finding as to Gavalo's intent based on the preponderance of the evidence standard. *See, e.g., United States v. Stroman*, 420 F. App'x 100, 105 (2d Cir. 2011) (remanding a case for sentencing where the district court imposed a base offense level for second-degree murder without expressly finding, by a preponderance of an evidence, that the defendant intended to kill the victim).

8

specific intent to kill). *Cf. United States v. Lucas*, No. 19-CR-467, 2023 WL 4209628, at *3 (E.D.N.Y. June 26, 2023) (finding that the evidence did not establish the defendant's intent to kill the victim where the defendant fired at the victim from more than twenty feet away, did not chase after the victim despite being aware the victim was likely not hit by any of the bullets fired, and instead fled the scene after observing the victim run away from him); *United States v. Tartt*, No. 20-CR-339 (S.D.N.Y. Jan. 10, 2022) (denying attempted murder cross-reference where defendant "shot at the victims at least twice" but missed and did not keep shooting).

### III. Conclusion

For the foregoing reasons, the Court finds that the Government has shown by a preponderance of the evidence that the attempted murder cross-reference pursuant to U.S.S.G. § 2A2.1 should be applied to the facts of this case.

Dated: April 1, 2025
      Brooklyn, New York

SO ORDERED:

      s/ MKB
MARGO K. BRODIE
United States District Judge